UNITED STATES of America,

v.

Vikram DATTA, Defendant.

No. 11 Crim. 0102(LAK).

United States District Court, S.D. New York.

July 14, 2011.

---

Peter M. Skinner, U.S. Attorney's Office, New York, NY, for United States of America.

Richard Franklin Albert, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New York, NY, for Defendant.

### MEMORANDUM AND ORDER

LEWIS A. KAPLAN, District Judge.

The defendant is charged with two counts of conspiracy to commit money laundering. Count One arises from his alleged use of his business to launder millions of dollars in illegal drug money from in or about October 2009 through in or about January 2011. The government says it expects the evidence to show that Datta's business—which began in New York and later operated in Laredo, Texas, and throughout the US–Mexico border region—made bulk purchases from seventeen suppliers in New York and New Jersey and wired hundreds of thousands of dollars through New York banks. Count Two relates to a "sting" operation during which Datta allegedly agreed to launder what he believed to be drug proceeds for undercover officers. The meetings relating to Count Two allegedly occurred in New York, California, and Nevada and involved a trip by Datta to New York. The matter now is before the Court on Datta's motion to transfer the case to the Southern District of Texas.

## I

■ FED.R.CRIM.P. 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Defendant bears the burden of justifying such a transfer.[1] To determine whether defendant has met his burden,

"the court should consider such factors as (a) location of the defendant[ ]; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendant['s] businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer."[2]

No one of these considerations is dispositive, however, and "[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance."[3] Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court.[4]

■ Some of the *Platt* factors favor or perhaps favor a transfer. It appears that more of the events pertinent to the indictment occurred in Texas than here, defendant's business is centered there, and the defendant's family now resides in Texas.[5] Similarly, it may be that more trial witnesses ultimately will prove to be Texas rather than New York area residents, although that remains somewhat unclear. On the other hand, the pertinent documents and records have been scanned by the government and made available to the defendant in electronic form, thus neutralizing any issue concerning the location of documents.[6] Given the defendant's pretrial detention, the trial of the case in New York would be no more disruptive to his business than would a trial in Texas. Nor is there any convincing evidence that a trial in Texas would be any less expensive than a trial in New York—indeed, the need to move the prosecution team to Tex-

---

1. *United States v. Valdes*, No. 05 CR 156(KMK), 2006 WL 738403, at *3 (S.D.N.Y. Mar. 21, 2006).

2. *United States v. Maldonado–Rivera*, 922 F.2d 934, 966 (2d Cir.1990) (citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964)), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991).

3. *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir.1990).

4. *Maldonado–Rivera*, 922 F.2d at 966.

5. The defendant has been detained pending trial. Accordingly, a trial here would be no more disruptive to him personally than a trial in Texas.

6. Defendant argues also that his counsel nevertheless may find it helpful to consult concerning the documents, either before or during trial, with the bookkeeper or other office personnel located at his business office in Texas. Insofar as such consultation might concern specific documents that have been turned over, it readily could be accomplished by telephone provided only that a copy of the single compact disk that contains the government's entire document production were provided to the person or persons in Texas sought to be consulted, in which case both counsel and that person or persons could have images of the precise documents concerned before them during any conversations. Moreover, face-to-face consultation, if desired, would be entirely possible by the simple means of bringing the bookkeeper or other concerned individual—all of whom are employed and paid by the defendant's business in any case—to New York.

as were the case transferred arguably makes the relative expense favor a trial here. Defense counsel is located in New York. Moreover, this Court already has scheduled trial of this case for September 12, 2011 and expects to begin on that date, ensuring that defendant will receive prompt attention regardless of comparative docket conditions.[7] It is far from clear that the case could be reached for trial that quickly in Texas if it were transferred at this late date.

At oral argument, defendant's counsel argued that a trial in Texas would be preferable because Texas jurors would be far more likely to be familiar with the allegedly unusual circumstances of the cross-border trade with Mexico and that things that might seem inherently suspect to New York jurors could readily be seen by Texas jurors as normal and appropriate. Perhaps there might be a difference in the relevant life experiences of at least some jurors, depending upon where the case were tried. But jurors in New York, Texas, and all over the United States frequently are called upon to decide matters of fact that arise in contexts with which they are not personally familiar. A moment's reflection on the fact that jurors regularly decide such matters as what would be obvious to a person skilled in an art or science with which they are personally unfamiliar, whether recorded conversations about Cadillacs or cars refer to such vehicles or instead reflect the argot of the drug trade and in truth refer to kilograms of cocaine or heroin, and whether a physician's choice of a given drug was consistent with the standard of care in a particular medical speciality, to give but a few examples, demonstrates the fallacy of the argument. Jurors are not selected for their special knowledge of the factual *milieus* in which particular cases arise. They are selected for their neutrality and their ability to consider the evidence presented to them fairly and properly. If specialized knowledge or expertise would be helpful to them in discharging their task, there are means of placing such evidence before them[8] and subjecting that evidence to the tests of cross-examination and rebuttal.

"As a general rule a criminal prosecution should be retained in the original district."[9] Defendant's showing is insufficient to warrant a departure in this case.

## II

Defendant's motion to transfer to the Southern District of Texas and for other relief[10] [DI 14] is denied.

SO ORDERED.

---

7. *United States v. Plott*, 345 F.Supp. 1229, 1233 (S.D.N.Y.1972).

8. Fed.R.Evid. 702.

9. *United States v. Borker*, No. 10 Crim. 1266(RJS), 2011 WL 1630344, at *2 (S.D.N.Y. Apr. 28, 2011).

10. The parties agree that the discovery aspects of the motion are moot.